IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ZUNILDA PEREZ | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ANDREW SAUL, | : | |
| Commissioner of Social Security | : | NO. 19-2446 |

O P I N I O N

JACOB P. HART                                                                        DATE:  April 27, 2020
UNITED STATES MAGISTRATE JUDGE

      Zunilda Perez brought this action under 42 USC § 405(g) to obtain review of the decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB"). She has filed a Request for Review to which the Commissioner has responded. For the reasons set forth below, Perez's Request for Review will be granted in part, and the matter remanded for consideration of Perez's claim of mental illness.

I.      Factual and Procedural Background

      Perez was born on May 20, 1960. Record at 208. She completed the second or third grade in school. Record at 60, 102. She worked in the past as a trimmer in a meat packing factory, a line worker assembling small products in a metal factory, and as a sales clerk in a retail store. Record at 102.

      On September 29, 2017, Perez applied for DIB. Record at 208. She alleged disability since September 15, 2016, as a result of bilateral rotator cuff repair, bilateral carpal tunnel syndrome, osteoporosis, high cholesterol, and impairments of the neck and spine. Record at 101. Perez's application was denied on December 26, 2017. Record at 121. She then sought *de novo* review from an Administrative Law Judge ("ALJ"). Record at 132.

A hearing was held in this matter on November 13, 2018.  Record at 56.  On December 24, 2018, however, the ALJ issued a written decision denying benefits.  Record at 42.  The Appeals Council denied Perez's request for review, permitting the ALJ's decision to stand as the final decision of the Commissioner.  Record at 8.  Perez then filed this action.

II.     Legal Standards

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence.  42 U.S.C. §405(g); Richardson v. Perales, 402 U.S. 389 (1971); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986); Newhouse v. Heckler, 753 F.2d 283, 285 (3d Cir. 1985).  Substantial evidence is relevant evidence viewed objectively as adequate to support a decision.  Richardson v. Perales, supra, at 401; Kangas v. Bowen, 823 F.2d 775 (3d Cir. 1987); Dobrowolsky v. Califano, 606 F.2d 403 (3d Cir. 1979).  Moreover, apart from the substantial evidence inquiry, a reviewing court must also ensure that the ALJ applied the proper legal standards.  Coria v. Heckler, 750 F.2d 245 (3d Cir. 1984).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period."  42 U.S.C. §423(d)(1).  As explained in the following agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity, if any.  If you are doing substantial gainful activity, we will find that you are not disabled.  (ii) At the second step, we consider the medical severity of your impairment(s).  If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in §404.1590, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.  (iii)  At the third step, we also consider the medical severity of your impairment(s).  If you have an impairment(s that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.  (iv).  At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work.

> If you can still do your past relevant work, we will find that you are not disabled. (v). At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 CFR §404.1520 (references to other regulations omitted).

III.　　The ALJ's Decision and Perez's Request for Review

In her decision, the ALJ determined that Perez suffered from the severe impairments of status post-rotator cuff repair; carpal tunnel syndrome; and degenerative disc disease. Record at 44. She found that none of Perez's impairments, and no combination of impairments, met or medically equaled a listed impairment. Record at 44-5.

The ALJ concluded that Perez retained the residual functional capacity ("RFC") to engage in light work with the following limitations: she could not climb ladders, ropes or scaffolds; she could perform handling and fingering frequently (as opposed to constantly); she could reach above shoulder level only occasionally, bilaterally; she needed to avoid hazards such as heights and moving machinery; and she was limited to understanding, remembering, and carrying out routine instructions. Record at 45.

Relying upon the testimony of a vocational expert who appeared at the hearing, the ALJ determined that Perez could return to her prior work as an assembler of small products, and as a sales clerk. Record at 50. She decided, therefore, that Perez was not disabled. Record at 51. In her Request for Review, Perez argues that the ALJ erred in failing to apply the psychiatric review technique; failing to do a function-by-function assessment of her RFC; wrongly assessing the opinion evidence; and in finding her capable of performing her past work.

IV.     Discussion

A.     The Psychiatric Review Technique

When there is evidence of a mental impairment that allegedly prevents a claimant from working, the Agency is required to evaluate the claimant's mental impairments by use of a prescribed Psychiatric Review Technique. 20 CFR § 404.1520a. An ALJ is not required to complete a Psychiatric Review Technique form. Izzo v. Commissioner of Social Security, 186 Fed. App'x 280, 285-6 (3d Cir. 20060; Nicolosi v. Astrue, Civ. A. No. 07-1208, 2007 WL 3226299 at *3 (E.D. Pa. October 31, 2007). However, the regulations do require an ALJ's decision to include the relevant findings and conclusions. Nicolosi v. Astrue, supra, citing 20 CFR § 404.1520a.

Thus, the ALJ's decision should rate the degree of limitation experienced by the claimant in the prescribed functional areas. Starner v. Colvin, Civ. A. No. 11-2249, 2013 W 5781709 at *7 (M.D. Pa. 2013), citing 20 CFR §404.1520a(c). The mere presence of a mental disturbance does not automatically indicate a severe impairment, but it cannot be ignored by the ALJ. Plummer v. Apfel, 186 F.3d 422, 432 (3d Cir. 1999). Instead, the ALJ has a duty to develop the record when there is a suggestion of mental impairment. Id.

In this case, Perez did not assert a mental health impairment in her application. Record at 101. Nor does the record contain any records from a mental health professional. No Psychiatric Review Technique form was completed at the initial stages of this case, before it went to the ALJ. Nevertheless, at the hearing, Perez testified that she suffered from depression and anxiety. Record at 67. She stated that her general practitioner prescribed triptyline, an antidepressant. Id. When asked generally about medication side effects, she testified that her antidepressant tended to increase her anxiety. Record at 65.

As Perez has pointed out in her Request for Review, Dr. Sotomayor mentioned in her records that she had diagnosed her on September 6, 2016, with a major depressive disorder. Record at 896.

The ALJ, however, acted as if no allegation of mental illness had been made. She did not complete a Psychiatric Review Technique form, nor did she discuss findings and conclusions relevant to Perez's alleged mental illness. She neither found Perez's depression and anxiety to be severe, nor did she find them to be non-severe. She did not mention any of the relevant evidence.

The Commissioner argues that the ALJ's failure to address Perez's claims of depression and anxiety was harmless error because the evidence would not have shown that she was disabled by mental illness. Indeed, the evidence is not extensive or particularly striking. However, it was enough to alert the ALJ to the presence of a claim of mental illness. This triggered the ALJ's duty to develop the record. Plummer, supra, at 432. It is possible that this would have led the ALJ to impose additional restrictions in her RFC assessment.

The psychiatric review technique, whether embodied in a form or in the language of a written decision, is intended to ensure that a claimant's mental health impairments are given serious consideration by the Commissioner. Plummer, supra. A cursory or brief discussion might have sufficed, but a complete failure to recognize that such a claim was made plainly falls short of "serious consideration." For this reason, I will order that this case be remanded for consideration of Perez's claim of mental illness.

B.      The Physical Function Assessment

As above, the ALJ found Perez capable of a limited range of light work.  Light work is specified by the regulations to require lifting no more than 20 pounds at a time, with frequent lifting or carrying up to ten pounds; it can also require "a good deal of walking or standing." 20 CFR §404.1567(b).  Thus, unless otherwise specifically limited, a claimant who is found able to perform light work must be able to do these things.  Id.

As above, the ALJ found that Perez could perform a range of light work, with certain limitations.  However, she did not specify exactly how long she found that Perez could stand and walk, how much weight she could lift, or how frequently she could reach in directions other than overhead.  Perez argues this was error.

Perez concedes that the Third Circuit does not require remand *per se* when an ALJ fails to provide her own function-by-function assessment.  See Bencivengo v. Apfel, Civ. A. No. 99-6135, 2000 WL 87584 at *2 (E.D. Pa. 2000), aff'd 251 F.3d 153 (3d Cir. Dec. 19, 2000) (table). She argues, nevertheless, that the ALJ erred here because she failed to engage with the evidence which showed that she was too limited in standing/walking, lifting, carrying, and reaching to perform work at the light exertional level.

As to standing and walking, Perez points out that even the report of the independent consulting physician, Ziba Monfared, MD, who examined her on December 5, 2017, stated that she could only walk for four hours in an eight-hour day, in one-hour increments.  Record at 1055.  However, Dr. Monfared also specified that Perez could stand up to four hours at a time, for up to seven hours in a workday.  Id.  Thus, according to Dr. Monfared, Perez could spend an entire workday on her feet.  The ALJ noted these findings in her decision.  Record at 49.

Dr. Monfared further opined that Perez could shop, travel, walk, use public transportation, climb a few stairs, cook simple meals, care for her own personal hygiene, and sort and handle papers. Record at 1059.

The ALJ gave Dr. Monfared's report "substantial weight." Record at 49. She was entitled to do so. There is evidence in the record of consistent complaints by Perez of lumbar pain. Record at 663, 810, 948, 984. Nevertheless, the objective evidence does not show extensive abnormalities of the lumbar spine which would explain an inability to walk or stand. An MRI conducted on August 18, 2015, showed only a small central herniation at L2-3, and "relatively minor narrowing of the central canal" at L4-5. Record at 948. The ALJ discussed this in her decision. Record at 46. There is no more recent lumbar MRI.

On examination, Dr. Monfared found no neurological abnormality, and full strength in both lower extremities. Record at 1052. The ALJ noted this. Record at 48. Similarly, on March 24, 2017, Perez's longtime general practitioner, Matilde Sotomayor, MD, noted normal muscle tone and strength, reflexes, gait, station, and sensation. Record at 1245.

On July 25, 2018, Akintomi Olugbodi, MD, a pain specialist, also observed a normal gait, and normal strength and reflexes, despite tenderness in the lower back. Record at 1194. Several months later, on October 3, 2018, Dr. Olugbodi noted an antalgic gait, with diminished 4/5 strength and reflexes in the legs. Record at 1197. However, there is no evidence that this level of impairment existed for a statutory 12-month period, nor is there any evidence in the record of a deterioration in Perez's condition which would explain this apparent decline in function. Dr. Olugbodi's findings were mentioned by the ALJ. Record at 47. Thus, substantial evidence supported the ALJ's conclusion that Perez could stand and walk at a level which was consistent with light work, and the ALJ adequately discussed this evidence.

As to Perez's ability to lift and carry, she points out that John Buckler, a chiropractor, limited her to five pounds on July 24, 2015. Record at 660. This limitation, however, was imposed only one month before the repair of her left rotator cuff, on August 20, 2015. Record at 434. A partial tear in her right rotator cuff was repaired on September 15, 2016. Record at 340, 343. On December 27, 2016, orthopedic surgeon Craig O'Neill, MD, wrote: "She doesn't need any restriction on the L. The R shoulder also doesn't require any restrictions at this point." Record at 868. Dr. Monfared indicated that Perez could lift and carry up to 50 pounds frequently, and 100 pounds occasionally. Record at 1054. Despite this, by limiting Perez to light work, the ALJ found her able to frequently lift and carry no more than 10 pounds. Perez has not shown this was unwarranted.

As above, the ALJ specified that Perez was limited in lifting overhead, to accommodate her status post-rotator cuff repair bilaterally. Perez argues that the ALJ should have discussed limitations in her ability to reach in other directions, arguing that Dr. Monfared found that all reaching was limited to only "occasional." Brief at 19. This is not an accurate cite. Dr. Monfared indicated that Perez was not limited at all in reaching with her right hand. Record at 1056. She indicated that, with her left hand, Perez could frequently reach overhead, and could lift in other directions only occasionally (although she may well have meant to reverse these). Id. Perez has not, therefore, shown that the ALJ's decision was inadequate in this regard.

It is true that the ALJ included no limit in her RFC assessment with respect to bending or stooping, although Perez had at times complained of difficulty bending. Record at, e.g., 810. Nevertheless, in response to her counsel's questioning at the hearing, the vocational expert testified that Perez's past relevant work could be performed with only occasional bending and stooping. Record at 81. This does not, therefore, compel relief.

C. <u>The Opinion Evidence</u>

In her decision, the ALJ wrote:

At various appointments in 2015 and 2016, claimant's orthopedic doctor, Craig A. O'Neill, MD, opined temporary postoperative restrictions, such as right upper extremity no lifting more than 25 pounds and no work above shoulder level. I give the opinion moderate weight to the extent that it is supported by his findings on examination of the claimant and is not inconsistent with a determination that claimant could perform light exertional work.

Record at 49.

Perez argues that the ALJ was not qualified to determine whether Dr. O'Neill's restrictions were inconsistent with his examination findings, but even she admits that the limitations "did appear to be specific to the relevant surgeries." The treatment note described by the ALJ was made six weeks after Perez's first surgery. Record at 869. A June 15, 2015, note read: "Work restriction to no overhead work 15 pound limit, if no improvement in six weeks will need surgery." Record at 888. Indeed, Perez underwent her first surgery approximately two months later.

Most importantly, as noted above, Dr. O'Neill wrote on December 27, 2016, that Perez was no longer limited in either shoulder, from his perspective. Record at 868. The earlier restrictions were therefore superseded.

Perez suggests that if the time she was restricted because of her first carpal tunnel repair surgery was combined with the time she was restricted because of her second surgery, this "raises the issue" as to whether they would create a period of restriction exceeding the twelve-month statutory limit, so that she would be eligible for a closed period of benefits. Brief at 21. However, she has not made a more detailed argument, or pointed to specific evidence which would resolve this issue. It does not appear that Perez was extremely limited in both shoulders at the same time for twelve months.

Perez also argues that the ALJ wrongly failed to discuss a form completed by Dr. Sotomayor on July 20, 2015, in connection with an application for FMLA leave. Record at 332-7. However, Dr. Sotomayor specified on the form that it only sought leave for a one-month period; June 24 through July 29, 2015. Record at 335.

Later in the form, Dr. Sotomayor indicated that Perez would require one day off from work every three or four weeks during the next six months. Record at 336. However, that situation, too, was specified to last less than the statutory twelve months. Accordingly, even if the ALJ erred in failing to discuss the FMLA application, remand is not required because there is no reasonable chance that remand would affect the outcome in this case. Rutherford v Barnhart, 399 F.3d 546, 553 (3d Cir. 2005).

D.     Perez's Past Work

Perez's final claim is that the ALJ erred in concluding that she could return to her past work as a sales clerk or a small products assembler. Perez indicated that, as she performed these jobs, they required standing and walking all day. Record at 63, 245-6.

The ALJ, however, found that Perez could perform these jobs both as she actually performed them, and as they were generally performed. Record at 50. There was no discussion at the hearing of the standing and walking requirements of these positions as they are generally performed, and Perez has only specified in her Request for Review that small products assembly "generally" involves conveyor belts. Brief at 23, citing https//occupationalinfo.org/70/706684022.html. This is not enough to show that no small assembly positions are performed while seated.

It is fairly obvious that a sales clerk must stand and walk to assist customers, but with no expert evidence it cannot be assumed that no sales clerk positions permit sitting at any time during the workday. It should also be noted that Dr. Monfared found Perez capable of a combination of standing and walking for an entire workday. Record at 1055. Perez has not, therefore, shown that the ALJ erred in finding that she had the physical capacity to perform her past relevant work.

V.      Conclusion

In accordance with the above discussion, I conclude that Perez's Request for Review should be granted in part, and the matter remanded for consideration of her claim of mental illness.

BY THE COURT:

/s/ Jacob P. Hart

_____

JACOB P. HART
UNITED STATES MAGISTRATE JUDGE